

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 9 2021

CLERK, U.S. DISTRICT COURT

By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAMES FRANKLIN BOYLE,               §
                                    §
        Petitioner,                 §
                                    §
v.                                  §        No. 4:20-CV-190-A
                                    §
BOBBY LUMPKIN, Director,[1]         §
Texas Department of Criminal        §
Justice, Correctional              §
Institutions Division,             §
                                    §
        Respondent.                §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, James Franklin Boyle, a
state prisoner confined in the Correctional Institutions Division
of the Texas Department of Criminal Justice, against Bobby
Lumpkin, director of that division, respondent. After having
considered the pleadings, state court records, and relief sought
by petitioner, the court has concluded that the petition should
be denied.

### I. FACTUAL AND PROCEDURAL HISTORY

Petitioner stands convicted in Palo Pinto, Texas, Case Nos.
15782, 15783, 15795, and 15882, on two counts of aggravated
sexual assault of a child, indecency with a child, and tampering

---

[1]Bobby Lumpkin has replaced Lorie Davis as the director of the
Correctional Institutions Division of the Texas Department of Criminal
Justice. Thus, he is automatically substituted as the party respondent. Fed.
R. Civ. P. 25(d).

with a witness. The jury assessed a 99-year sentence for each of his aggravated-sexual-assault convictions, a 50-year sentence for his tampering conviction, and a 20-year sentence for his indecency conviction, in addition to a $5000 fine in each case. (Mem. Op. 1-2, doc. 37-24.) The trial court ordered that his 99-year sentences run consecutively to his 20-year sentence. Petitioner's convictions were affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Electronic R., doc. 37-1.) Petitioner also filed four post-conviction state habeas-corpus applications challenging his convictions, which were denied by the Texas Court of Criminal without written order. (SHR-01[2] 3-20, doc. 37-33 & Action Taken, doc 37-29; SHR-02 3-21, doc. 37-38 & Action Taken, doc. 37-34; SHR03 3-22, doc. 37-43 & Action Taken, doc. 37-39; SHR04 3-20, doc. 37-48 & Action Taken, doc. 37-44.) This federal habeas petition followed.[3]

Petitioner's jury trial commenced on April 4, 2017, during which testimony reflected that during the summer of 2015 petitioner was providing free childcare in his home for multiple children, including J.P., M.P., and N.C., boys between the ages

---

[2]"SHR01," "SHR02," "SHR03," and "SHR04" refer to the state court records of petitioner's state habeas proceedings in WR-90,625-01, -02, -03, and -04, respectively. The records are largely unpaginated; therefore, the pagination in the ECF header is used.

[3]The petition consists of four form petitions filed as one document; therefore, the pagination in the ECF header is used.

of 5 and 8. The boys enjoyed going to petitioner's house, where
there were other children to play with and where they fished and
swam in the river, played video games, and rode bikes and four-
wheelers. There were also occasions when the boys spent the night
at petitioner's house. J.P., M.P., and N.C. eventually made
outcrys that petitioner abused them sexually. After criminal
charges were brought against petitioner in the boys' cases,
several of petitioner's family members threatened N.C.'s mother,
C.C., to drop the charges or she would be sued or charges would
be brought against her.

## II. ISSUES

From what the court can gleen from the avalanche of
petitioner's pleadings and the state court records, petitioner's
claims fall within the following general categories:

    (1)   trial records;

    (2)   speedy trial;

    (3)   impartial jury;

    (4)   prosecutorial misconduct;

    (5)   abuse of discretion by the trial court; and

    (6)   ineffective assistance of trial and appellate counsel.

(Pet. 6-7, 16-17, 26-27, 36-37, doc. 1; Mot. 13-15, doc. 3; Mot.
to Dismiss 2-3, doc. 13; Mot. to Dismiss 14-15, doc. 14; Mot. to
Amend 2, doc. 20.) Petitioner's grounds for relief, which are
vague and multifarious, are addressed as thoroughly as practical

3

and to the extent exhausted in state court as best the court can determine. *See* 28 U.S.C. § 2254(b)(1)(A).

### III.   RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently exhausted his state remedies as to the claims raised as respondent interprets them and that the petition is neither barred by limitations nor subject to the successive-petition bar. (Resp't's Answer 10, doc. 35.)

### V. LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v.*

4

*Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191–92 (2018). If there is no related state-

court decision providing the court's reasoning, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case and then determines whether its decision was contrary to or an objectively unreasonable application of that law. *See* 28 U.S.C.A. § 2254(d)(1); *Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006).

## V. DISCUSSION

### A.    Free Copy of Trial Transcripts

Petitioner claims that as an indigent defendant he had no transcripts or court records in preparation of his petition for discretionary review, his petition for writ of certiorari, his state habeas application, or this federal habeas petition. (Pet. 6, 16, 26, 36, doc. 1.)

An indigent inmate has no automatic right to copies of court records free of charge. *See Kunkle v. Dretke,* 352 F.3d 980, 985–86 (5th Cir. 2003). And, it is well-settled that the state is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle,* 672 F.2d 505, 506 (5th Cir. 1982). Instead, in *Griffin v. Illinois,* 351 U.S. 12, 19–20 (1956), the Supreme Court held that the due process and equal protection clauses of the Fourteenth Amendment require that states provide indigent defendants with a trial transcript free of charge only when it is necessary for meaningful review on

6

direct appeal.

In this case, the record reflects that petitioner was provided a copy of his state court records for review by the appellate court after his first appellate attorney filed an *Anders* brief and a motion to withdraw. (COA Order, doc. 37-23.) Thus, on this record, it appears that he had adequate access to his state court records in pursuit of his direct appeal. He did not however have any right to a free copy of his court records for use in his state or federal post-conviction collateral proceedings. *See Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir. 1975); *Colbert v. Beto,* 439 F.2d 1130, 1131 (5th Cir. 1971).

**B.  Speedy Trial**

Petitioner claims that he was denied his right to a speedy trial. In his state habeas proceedings, petitioner asserted that he was arrested on or about August 7, 2015, but was not "taken to trial" until April 2017. (SHR01 10, doc. 37-33; SHR04 14, doc. 37-48.)

The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. U.S. CONST. amends. VI, XIV; *Klopfer v. North Carolina,* 386 U.S. 213, 223-26 (1973). In *Barker v. Wingo,* the Supreme Court prescribed several factors to be considered when evaluating a speedy-trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's

7

assertion of his right to speedy trial, and (4) prejudice to the
defendant. 407 U.S. 514, 530 (1972). None of these factors is
either necessary or sufficient to find a speedy-trial violation;
"[r]ather, they are related factors and must be considered
together with such other circumstances as may be relevant." *Id.*
at 533. The speedy-trial inquiry therefore involves a "difficult
and sensitive" balancing of these factors under the particular
circumstances of each case. *Id.* at 530.

Deferring to the state habeas court's implied factual
findings on the issue and assuming the state court engaged in a
*Barker* analysis, petitioner fails to establish that the state
court's denial of relief is objectively unreasonable. Although
the delay in this case may be presumptively prejudicial, it is
impossible from the record to determine the reason(s) for the
delay or whether the delay is attributable to the state or the
defense. The record does indicate however that petitioner's case
was set for trial on June 6, 2016, and on November 7, 2016, in
Case No. 15882 and in each instance defense counsel moved for a
continuance, which was granted. (Clerk's R. Case No. 15882 83,
doc. 37-5.) The record further indicates that on April 3, 2017,
prior to commencement of voir dire, petitioner requested a
continuance to obtain medical records and a new attorney on his
case, which was denied. (Reporter's R., vol. 4, 5-7, doc. 37-10.)
Thus, these factors do not necessarily fall in petitioner's

favor.

The record also indicates that petitioner first asserted the right in Case Nos. 15783 and 15795 in a pro se "motion for dismissal" filed on February 28, 2017. (Clerk's R., Case No. 15783, 30, doc. 37–3; Clerk's R., Case No. 15795, 34, doc. 37–4.) In the motion, petitioner asserts that he requested a speedy trial on March 2, 2016, however petitioner does not cite the court to the location of any such request in the record. There is an "Inmate Request" to the judge filed in Case No. 15782 on February 3, 2016, in which petitioner stated that he was "ready for trial" and asking if "fast and speedy trial is still 6 month." (Clerk's R., Case No. 15782, 30, doc. 37–2.) However, his pro se motion and "Inmate Request," made while represented by counsel, were properly disregarded by the trial court. A criminal defendant does not have the right to "hybrid representation." *United States v. Long*, 597 F.3d 720, 729 (5th Cir. 2010). Thus, this factor does not necessary fall in petitioner's favor either, and the record is devoid of any actual prejudice resulting from the delay.

## C.   Impartial Jury

Petitioner claims that he was denied an impartial jury because the four cases were consolidated in a single trial. (Mot. 13, doc. 3; SHR03 16, doc. 37–43; SHR04, 10, doc. 37–48.)

The court finds no legal authority under federal law as

9

determined by the Supreme Court making it improper for a criminal defendant to be tried for multiple offenses which arise out of the same nexus of operative facts. And, state law expressly provides that, with proper notice, "[a] defendant may be prosecuted [on more than one charging instrument] in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a)-(b) (West Supp. 2014). When multiple offenses arising out of the same criminal episode are consolidated in a single trial and the defendant is found guilty of more than one offense, the sentences may run concurrently or consecutively if each conviction is for a conviction involving sexual offenses committed against children, including aggravated sexual assault of a child and indecency with a child. *Id.* § 3.03(b)(2). "Criminal episode" is defined as "the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person, when "(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan or (2) the offenses are the repeated commission of the same or similar offenses." *Id.* § 3.01(1)-(2). The statute does not require that the offenses have a factual nexus or relationship to each other or that the "repeated" offenses involve the same victim, be close in temporal or geographic proximity, or were committed in the same or similar

10

fashion. *Matter of Expunction of J.B.,* 564 S.W.3d 436, 441 (Tex. App.-El Paso 2016, no pet.); *In re M.T.R.,* 606 S.W.3d 288, 292 (Tex. App.-Houston [1st Dist.] Feb. 27, 2020, no pet.); *Ex parte R.A.L.,* No. 04-19-00479-CV, 2020 WL 557542, at *2 (Tex. App.-San Antonio Feb. 5, 2020, pet. denied); *Ex parte J.A.B.,* 592 S.W.3d 165, 169 (Tex. App.-San Antonio 2019, no pet.).

Assuming the state courts found that the joinder of petitioner's cases was proper as a matter of state law, the claim fails to state a claim for federal habeas relief. Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson,* 162 F.3d 385, 395 (5th Cir. 1998).

**D.   Prosecutorial Misconduct**

Petitioner claims that the state engaged in prosecutorial misconduct by

(1)   presenting false evidence;

(2)   bolstering the individual cases with the other cases; and

(3)   tampering with physical evidence and government records.

(Pet. 7, 17, 27, 37, doc. 1.)

A claim of prosecutorial misconduct requires proof of improper conduct by the prosecutor that, taken in the context of the trial as a whole, violated the defendant's due process

11

rights—*i.e.,* rendered the trial fundamentally unfair. *Barrientes v. Johnson,* 221 F.3d 741, 753 (5th Cir. 2000). "A trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" *Foy v. Donnelly,* 959 F.3d 1307, 1317 (5th Cir. 1992).

With regard to petitioner's first and third claims, he asserts that the state tampered with government documents and/or presented false evidence with respect to state witness M.L.'s date of birth. The state called M.L. during the guilt/innocence phase of trial to testify to a separate unrelated sexual offense against petitioner. (Reporter's R., vol. 6, 110-12, 119, doc. 37-12.) Although it is unclear, petitioner appears to argue that an "Incident Report" attached to the "State's Notice of Intent to Introduce Evidence that Defendant Committed Separate Sexual Offense During Case in Chief in Trial of a Sexual Offense Pursuant to Art. 38.37, C.C.P." was altered to reflect, and the state presented M.L.'s perjured testimony, that he was born on March 20, 2000, instead of in 1996 or 1997. (Clerk's R., Case No. 15782, 50-57, doc. 37-2; Pet'r's Corresp. 6, doc. 62; Pro Se Resp. 1-4, 6-13, doc. 37-22.)

Having reviewed the incident report, it is impossible to determine whether the incident involved M.L.'s case, a case involving another alleged victim, B.S., or both. Nevertheless,

12

except for the redaction of certain personal identifying information of the victims and reporting individual(s), there is nothing to indicate that the document was altered or tampered with or that the prosecution knowingly presented materially false evidence to the jury or perjury. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983). Petitioner's conclusory allegations, with no evidentiary basis, do not raise a constitutional issue in a habeas proceeding. *Id.* at 1012.

With regard to petitioner's second claim, he generally asserts that the prosecution bolstered one or more of the cases, which were "deficient of evidance [sic] and I.d.," with evidence from the other case(s). (Pet. 7, 17, 27, 37, doc. 1.)

Under state law, "[b]olstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party." *Rousseau v. State,* 855 S.W.2d 666, 681 (Tex. Crim. App. 1993). State courts define bolstering as "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit" when the credibility of that witness or source has not been attacked. *Cohn v. State,*

13

849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Bolstering does not occur when evidence or a source of evidence corroborates other evidence and is also relevant, *i.e.,* when it contributes substantively "'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.* (brackets in original). Evidence may not be excluded as bolstering simply because it corroborates other testimony. *See id.* at 820.

In this case, the elements of the offenses were sufficiently established in each case by the victim's testimonies and the victims identified petitioner at trial as the person who committed those offenses, except for N.C. who was unable to identify petitioner at trial. (Reporter's R., vol. 5, 81, 125, 213, 267, doc. 37-11.) Assuming that the state courts found that the presentation of other relevant and admissible witness testimony simply corroborating those testimonies was not impermissible bolstering, petitioner fails to demonstrate improper conduct by the prosecution that, taken in the context of the trial as a whole, violated his right to a fair trial.

## E.  Abuse of Discretion

Petitioner claims that the trial court abused its discretion by

    (1)   overruling the defense objection to hearsay in Case No. 15782 (indecency with a child against M.P.) to Paige Orona's testimony regarding statements made to her by M.P.;

    (2)   denying his motions for directed verdict;

    (3)   denying his motions for continuance; and

    (4)   reopening the case to admit evidence after close
          of argument and not allowing the defense "to argue
          the new evidence."

(Pet. 7, doc. 1.)

To prevail on a claim concerning these issues, petitioner must show that the trial court erred in such a manner as to render the trial as a whole fundamentally unfair. *See Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 24 (1981); *Bailey v. Procunier,* 744 F.2d 1166, 1168 (5th Cir. 1984). To warrant relief, the trial court's error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637–38 (1993). This requires the petitioner to demonstrate actual prejudice. *See id.* at 637.

Petitioner claims that the trial court abused its discretion by overruling his hearsay objection in Case No. 15782 (indecency with a child against M.P.) to the outcry witness's testimony regarding statements made to her by M.P. In the last reasoned opinion on the matter, the appellate court did not believe that the trial court abused its discretion when it designated Paige Orona as the outcry witness for purposes of article 38.072 of the Texas Code of Criminal Procedure, and, in the alternative, found that any error was harmless. (Mem. Op. 5–10, doc. 37–24.)

15

Deferring to the state court's determination of state law, this court is unable to find any trial court error related to the admission of her testimony. In the absence of error by the trial court, an evidentiary ruling cannot deny a criminal defendant a constitutionally fair proceeding.

Petitioner asserts that the trial court abused its discretion by denying his motions for directed verdict. Under state law, a motion for a directed verdict is the functional equivalent of a challenge to the sufficiency of the evidence. *See Canales v. State,* 98 S.W.3d 690, 693 (Tex. Crim. App. 2003). The standard of review for sufficiency of evidence is whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The evidence must be viewed in the light most favorable to the jury's verdict and all reasonable inferences from the evidence must be construed in favor of the verdict. *Id.; Glasser v. United States,* 315 U.S. 60, 80 (1942). Determining the weight and credibility of the evidence is within the sole province of the jury. *United States v. Pena*, 949 F.2d 751, 756 (5th Cir. 1991).

Deferring to the state courts' implied factual findings, the state courts' application of *Jackson* is not "objectively unreasonable." Under Texas law, the testimony of a child sexual abuse victim alone is sufficient evidence to support a

16

conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2017); *Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Courts give wide latitude to testimony given by child victims of sexual abuse. *See Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). The victim's description of what happened to him need not be precise, and he is not expected to express himself at the same level of sophistication as an adult. *Id.* There is no requirement that the victim's testimony be corroborated by medical, physical, or other evidence. *Garcia,* 563 S.W.2d at 928.

> In Case No. 15782, the indictment alleged that petitioner
>
> did . . . with the intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly engage in sexual contact with M.P. by touching the genitals of M.P. . . .

(SHR01 21, doc. 37-33.)

M.P., who was 7 years old at the time of trial, testified that on four or five occasions petitioner put his mouth or hand on his front "bad spot" and moved "up and down" and he identified petitioner in court as the person who did those things to him. (Reporter's R., vol. 5, 72-74, 81-82, doc. 37-11.)

> In Case No. 15783, the indictment alleged that petitioner
>
> did . . . intentionally or knowingly cause the penetration of the mouth of N.C. . . . by the defendant's sexual organ.

(SHR02 22, doc. 38-38.)

N.C., who was nine years old at the time of trial, testified

that when he and his brother spent the night at petitioner's house, he sometimes slept in petitioner's bed. (Reporter's R., vol. 5, 266, doc. 37-11.) He stated that more than one time petitioner touched him on his "nuts," where he goes pee, with petitioner's mouth and that petitioner's "nut" went into his mouth. He described that petitioner's "nut" was hard when he did this and tasted "nasty." (Id. at 264-66.) According to N.C., these events occurred in petitioner's room with the door closed. (Id. at 265-66.) N.C. could not identify petitioner in court as the person who did those things to him, however there is no evidence suggesting that N.C. was confused as to the perpetrator's identity or that a different person may have been the perpetrator.

> In Case No. 15795, the indictment alleged that petitioner
>
> did . . . intentionally or knowingly cause the sexual
> organ of J.P. . . . to contact and penetrate the mouth
> of the defendant.

(SHR03 23, doc. 37-43.)

J.P., who was 10 years old at the time of trial, testified that while he was sleeping at petitioner's house, petitioner touched his "bad spot" with his hand and mouth and moved "up and down," that petitioner made him touch petitioner's "bad spot" under his clothes, and that it was hard when he touched it. (Id. at 121-24.) He also identified petitioner in court as the person who did those things to him. (Id. at 125.)

18

In Case No. 15882, the indictment alleged that petitioner

> did . . . coerce [C.C.], who was then and there a
> witness in an official proceeding, to-wit: a
> prosecution of another for the offense of Aggravated
> Sexual Assault of a Child, by threatening to cause a
> lawsuit to be filed against the said [C.C.], with
> intent to influence the said [C.C.] to abstain from or
> discontinue the prosecution of another in the official
> proceeding.

(SHR04 21, doc. 37-48.)

C.C. testified that following petitioner's arrest, she began receiving threatening text messages and phone calls from petitioner's family. (Reporter's R., vol. 5, 218-20, doc. 37-11.) C.C. met with three of petitioner's relatives at their request and at the behest of petitioner and the meetings were monitored and recorded by law enforcement. (Id. at 223, 246; Reporter's R., vol. 6, 90, doc. 37-12.) The gist of the meetings were to get C.C. to drop the charges by threatening that she would be sued or that charges would be brought against her. (Reporter's R., vol. 5, 218-23, doc. 37-11.)

Although the children's testimony alone is sufficient to support petitioner's convictions in Case Nos. 15782, 15783, and 15795, there was also testimony by the outcry witnesses; the forensic interviewer for the Children's Alliance Center who interviewed all three boys; the SANE nurse who examined all three boys; and M.L. regarding the separate sexual offense. In addition to C.C.'s testimony and the audio and video recordings of the meetings with petitioner's family members in Case No. 15882,

there was testimony by the investigating detective regarding recorded phone calls petitioner made from the jail to family members and the discs of those recordings were admitted into evidence. Viewing the evidence in its entirety in the light most favorable to the jury verdicts, a rational trier of fact could have determined beyond a reasonable doubt that petitioner committed the offenses as charged.

Petitioner asserts that the trial court abused its discretion by denying his motions for continuance. (Pet. 27, 37, doc. 1.) When a denial of a continuance is the basis for a habeas petition, a petitioner must show that the failure to grant a continuance harmed the defense. *United States v. Pollani,* 146 F.3d 269, 272 (5th Cir. 1998).

As explained by respondent,

[p]rior to the start of trial, [petitioner]'s attorney requested a continuance as a precaution, in the event that his investigator would not have sufficient time to obtain [petitioner]'s medical records, which he said was important to his defense, and also because [petitioner] had informed him that he intended to hire a new attorney. He requested a continuance again at the end of the State's case in chief. At that time, he had obtained [petitioner]'s medical records, which he introduced as Exhibit 1, but renewed his request for a continuance because the records did not contain anything about his inability to achieve an erection, which was part of his defense. The judge denied his motion for continuance. Defense counsel then added that he needed additional time to locate witnesses, two of which he had just learned of. The judge again denied the request, reminding defense counsel that the case had been set for trial for a long time.

(Resp't's Resp. 21-22, doc. 35 (record citations omitted).)

20

The record supports that petitioner did receive medical records in excess of 700 pages prior to his case in chief, and he did not produce any additional records in state court or this court. Thus, he cannot show harm resulting from the trial court's denial of a continuance for that purpose.

When a motion for continuance for the purpose of securing defense witnesses is denied, the factors a court must consider in determining whether a trial court abused its discretion in denying a continuance motion are: the defense's diligence in interviewing and procuring the presence of the witnesses, the defense's estimation of the probability of procuring live testimony within a reasonable time, the specificity with which the defense is able to describe the expected testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony. *See Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981).

Defense counsel requested time to procure as witnesses Stephanie Short, Lonnie Johnson Jr., and Wesley Claude Gray. (Reporter's R., vol. 6, 129-30, doc. 37-12.) Nothing in the record suggests the diligence used by the defense in procuring the witnesses, however it is apparent that counsel obtained investigators, one of whom became sick approximately 30 days before trial, to assist him in trial preparation. (Reporter's R., vol. 6, 129, doc. 37-12.) The record also reflects that Short was

21

subpoenaed to appear by the state and was available by telephone prior to the defense's case in chief. (Id. at 129-30; Clerk's R., Case No. 15782, 61, doc. 37-2.) Defense counsel indicated that he just learned of the other two witnesses and had no phone numbers for them. Nevertheless, petitioner wholly fails to indicate what the nature of their testimony would have been and how it would have favored his defense. Under these circumstances, he cannot show harm resulting from the trial court's denial of a continuance for the purpose of procuring the witnesses.

Petitioner asserts that the trial court abused its discretion by reopening the case to admit evidence after the close of argument and not allowing the defense "to argue the new evidence." (SHR03 10-11, doc., 37-43; SHR04 16-17, 19 doc. 37-48.) In support, petitioner directs the court to article 36.02 of the Texas Code of Criminal Procedure, which provides that "[t]he court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. P. ANN. art. 36.02 (West 2007). However, no new testimony or other evidence was introduced following conclusion of argument in either phase of petitioner's trial. During deliberations in the guilt/innocence phase, it does appear that, at their request, the trial court allowed the jury to view state's exhibits 14, 15, and 16, which are audio and video recordings admitted into evidence

22

during trial. (Reporter's R., vol. 7, 5-7, doc. 37-13.)

Petitioner cites to no support, and the court finds none, that the replaying of audio and video recordings already admitted into evidence without objection and seen by the jury constitutes receipt of other testimony or evidence for purposes of article 36.02. In fact, under state law, the trial court was required to "furnish[] to the jury upon its request any exhibits admitted as evidence in the case," and was thus required to provide the audio and video recordings when the jury requested them. *Id.* art. 36.25 (West 2006). Petitioner and his counsel were present when the audio and video recordings were replayed and he does not contend there was anything new, added, or different in the replaying. Consequently, he fails to demonstrate error or harm as a result of the trial court's replaying of the recordings.

## F. Ineffective Assistance of Counsel

Finally, petitioner claims that he received ineffective assistance of trial and appellate counsel. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that

23

but for counsel's deficient performance the result of the
proceeding would have been different. *Strickland*, 466 U.S. at
688. In applying this test, a court must indulge a strong
presumption that counsel's conduct fell within the wide range of
reasonable professional assistance. *Id.* at 668, 688-89. Judicial
scrutiny of counsel's performance must be highly deferential and
every effort must be made to eliminate the distorting effects of
hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered
mixed questions of law and fact and, therefore, are analyzed
under the "unreasonable application" standard of § 2254(d)(1).
*See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where
the state court has adjudicated the ineffective-assistance claims
on the merits, this court must review petitioner's claims under
the "doubly deferential" standards of both *Strickland* and §
2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such
cases, the "pivotal question" for this court is not "whether
defense counsel's performance fell below *Strickland*'s standard";
it is "whether the state court's application of the *Strickland*
standard was unreasonable." *Richter,* 562 U.S. at 101. *See also*
*id.* at 105 ("Establishing that a state court's application of
*Strickland* was unreasonable under § 2254(d) is all the more
difficult. The standards created by *Strickland* and § 2254(d) are
both 'highly deferential,' and when the two apply in tandem,

review is 'doubly' so. (internal quotation marks and citations omitted)).

Petitioner claims that he received ineffective assistance of trial counsel because failed to object to a consolidated trial; lack of a speedy trial; lack of an impartial jury; prosecutorial misconduct; judicial abuse of discretion; and the complainant's failure to properly identify him in Case No. 15783 (aggravated sexual assault of N.C.). (Pet. 26, doc. 1; Mot. 15, doc. 3.)

Deferring to the state habeas court's implied factual findings regarding these claims, and assuming the state court applied the *Strickland* standard to petitioner's claims, the court's rejection of the claims is not objectively unreasonable. Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green*

25

*v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) ("[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"). A petitioner shoulders a heavy burden to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

Petitioner claims that appellate counsel was ineffective by failing to raise the issues he raise in this federal petition. (Pet. 7, 16, 36, doc. 1; Mot. 15, doc. 3.) Petitioner's claims against appellate counsel carry the same factual and legal infirmities as his complaints against trial counsel, and fare no better. Petitioner fails to set forth any viable omitted grounds of reversible error, and none appear in the record. Therefore, the state court's application of *Strickland* to petitioner's claims is not objectively unreasonable.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of

26

habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED April _____ 9 _____, 2021.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

27